# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

RACHAEL RANELLUCCI,      )
                                   )
      **Plaintiff,**         )
                                   )     **Case No. 3:11-cv-00640**
**v.**                          )
                                 )     **Judge Nixon**
**MICHAEL J. ASTRUE,**      )     **Magistrate Judge Brown**
**Commissioner of Social Security,**  )
                                 )
      **Defendant.**      )

## ORDER

Pending before the Court is Plaintiff Rachael Ranellucci's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 16), filed with an attached Brief in Support (Doc. No. 16-1). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition. (Doc. No. 21.) Magistrate Judge Brown issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and the decision of the Commissioner be affirmed. (Doc. No. 22 at 1.) Plaintiff filed an Objection to the Report. (Doc. No. 23.) For the reasons stated below, the Court **ADOPTS** the Report in its entirety, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.

## I.   BACKGROUND

### A.  *Procedural Background*

Plaintiff filed an application for Supplemental Security Income ("SSI") on July 24, 2006, asserting disability due to pins in the right side of her body, bipolar disorder, and posttraumatic stress disorder. (Tr. 46-47.)[1] Plaintiff alleged disability beginning on January 1, 1968. (Tr. 15.)

---

[1] An electronic copy of the administrative record is docketed in this case at Doc. No. 10.

The Social Security Administration ("SSA") denied Plaintiff's claim on January 23, 2007, and Plaintiff did not appeal. (*Id.*)

Plaintiff filed a second application for SSI on May 9, 2008, asserting disability due to leg pain, ankle fracture, bipolar disorder, schizophrenia, and posttraumatic stress disorder. (Tr. 50-51.) Plaintiff alleged disability beginning on October 6, 1963, her birthdate. (Tr. 168-74, 199.) SSA denied Plaintiff's application on August 15, 2008, and again upon reconsideration on November 13, 2008. (Tr. 15.)

Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on November 13, 2008. (*Id.*) ALJ Linda Gail Roberts reopened Plaintiff's first case at the time she granted Plaintiff's request, and the hearing took place before ALJ Roberts on June 30, 2010. (Tr. 15, 31-45.) Plaintiff and vocational expert ("VE") Michelle McBrume Weiss appeared and testified at this hearing. (*Id.*) ALJ Roberts denied Plaintiff's claim on July 19, 2010. (Tr. 12-25.) ALJ Roberts made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since July 24, 2006, the prior file application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: bipolar disorder, personality disorder not otherwise specified, and a history of polysubstance abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels (consistent with exhibit 8F) but with the non-exertional limitations expressed in exhibits 13F and the visual limitations in exhibit 8F. She is able to remember simple instructions and detailed instructions with some difficulty at times but can still do. She is able to sustain concentration, persistence, and pace over extended periods for simple tasks and detailed tasks

2

with some difficulty at times. She is able to interact with the general public with some difficulty at times but still can do. She is able to respond to routine changes.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on October 6, 1963 and was 42 years old, which is defined as a younger individual age 18-49, on the date the prior application was filed (20 CFR 416.963).

7.      The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.      The claimant has not been under a disability, as defined in the Social Security Act, since July 24, 2006, the date the prior application was filed (20 CFR 416.920(g)).

(Tr. 17-25.)

Plaintiff filed a request for review of the decision on July 28, 2010 (Tr. 10-11), that was denied by the Appeals Council on May 20, 2011, rendering ALJ Roberts's decision the final decision of the Commissioner (Tr. 1-5).

Plaintiff filed this action on July 5, 2011, to obtain judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g) 1383(c) (2010). (Doc. No. 1.) Pursuant to Magistrate Judge Brown's order of October 19, 2011 (Doc. No. 11), Plaintiff filed a Motion for Judgment on the Record with supporting Brief on January 19, 2012. (Doc. No. 16.) Defendant filed a Response on May 1, 2012. (Doc. No. 21.) Magistrate Judge Brown issued his Report recommending that Plaintiff's Motion be denied on July 12, 2012. (Doc. No. 22.)

3

On July 25, 2012, Plaintiff filed an Objection to the Report. (Doc. No. 23.) Specifically, Plaintiff asserts that Magistrate Judge Brown failed to evaluate whether Plaintiff was given an opportunity to comply with treatment under Social Security Ruling ("SSR") 82-59, and the failure was an error of law warranting remand to the Commissioner. The Court now reviews Magistrate Judge Brown's Report, considering Plaintiff's Objection.

### B. Factual Background

#### 1. Medical History

Plaintiff was born on October 6, 1963. (Tr. 46.) At the June 30, 2010 hearing before ALJ Roberts, Plaintiff testified that she has been receiving treatment for mental and emotional problems for many years. (Tr. 36.) The administrative record contains a substantial number of Plaintiff's medical records dating back to 1998. In April 1999, Plaintiff was seen by David Harrom, M.D., presenting with symptoms of anxiety, depression, and cocaine addiction. (Tr. 283-85.) Dr. Harrom began treating Plaintiff with Ativan, which helped Plaintiff to stop using cocaine for a period of time. (*Id*.)

For the next four years, Dr. Harrom's records show patterns of adequate symptom control with medication, interspersed with brief periods of anxiety and depression. (Tr. 277-83.) Medications Dr. Harrom prescribed during this period include Elavil, Zoloft, Meridia, BuSpar, Mellaril, Keflex, Lorazepam, Zyprexa, Fastin, Phentermine, Natrol, and Xanax. (*Id*.) On February 22, 2002, Plaintiff began a probation-related drug and alcohol program at Centerstone Community Mental Health Care Centers, Inc. ("Centerstone"), with varying levels of compliance and sobriety. (Tr. 683-935.) During her time in the program, Plaintiff had at least two urine screens that tested positive for cocaine and once was caught attempting to pass water off as urine. (Tr. 786-91.) On March 12, 2004, Plaintiff was hospitalized for seven days at Tennessee

4

Christian Medical Center for depression, suicidal ideations, and drug use. (Tr. 276, 304-10.) During Plaintiff's hospitalization, Chandra Sastry, M.D., diagnosed Plaintiff with bipolar disorder and polysubstance dependency, and prescribed Lexapro and Risperdal. (Tr. 310.) Upon discharge, Plaintiff was referred to Centerstone for continued treatment and medication management. (*Id.*)

Plaintiff stopped receiving treatment at Centerstone in late 2004. (Tr. 318). She was not treated again until she was hospitalized for four days at Middle Tennessee Mental Health Institute ("MTMHI") on July 11, 2006, following a relapse into drug use. (*Id.*) Upon discharge from MTMHI, Indu Senapati, M.D., assessed that Plaintiff had a Global Assessment of Functioning (GAF)[2] score of 60 and diagnosed her with a mood disorder not otherwise specified. (*Id.*) Plaintiff received Lexapro, Depakot, and Neurontin, and planned to receive follow-up treatment at Centerstone. (Tr. 320.) Plaintiff briefly resumed treatment at Centerstone following her discharge, but attended only one appointment, on July 17, 2006, before missing two scheduled visits. (Tr. 650-58.)

When Plaintiff first filed for SSI on July 24, 2006, she was examined by Thelma Foley, Ed.D., as part of the application process. (Tr. 337.) Plaintiff complained of fatigue, anxiety, depression, a racing mind, and severe mood swings. (*Id.*) Plaintiff told Dr. Foley that she could perform various household chores daily with moderate success unless she became overwhelmed,

---

[2] The Global Assessment of Functioning test is a subjective determination that represents the "clinician's judgment of the individual's overall level of functioning." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 924 n. 1 (E.D. Mich. 2005) (*citing* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994)). The score ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31 to 40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id.* A GAF score of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id.*

and that she went to church two to three times per month.  (Tr. 339.)  Plaintiff also said she spoke to a few friends on the phone.  (*Id.*)  However, Plaintiff noted that she had more friends and energy to work when her mood swings were less severe.  (*Id.*)

On January 8, 2007, as part of her SSI application, Plaintiff underwent a Psychiatric Review by Frank D. Kupstas, Ph.D.  (Tr. 341-54.)  Dr. Kupstas determined that Plaintiff suffered from a medically determinable mood affective disorder and a medically determinable anxiety-related disorder.  (Tr. 344, 346.)  Based on these findings, Dr. Kupstas recommended Plaintiff undergo a Residual Functional Capacity ("RFC") Assessment to further assess whether Plaintiff's functioning impairments qualified her for SSI benefits.  (Tr. 341.)

In his Mental RFC Assessment, Dr. Kupstas found Plaintiff was able to concentrate on simple tasks for extended periods and detailed tasks, but with some difficulty.  (Tr. 355, 357.)  Dr. Kupstas also found Plaintiff was able to interact with the general public and respond to routine changes in a work environment, albeit with some difficulty.  (Tr. 356-57)  Dr. Kupstas found Plaintiff to be "moderately limited" in a minority of the abilities tested and "not significantly limited" in the majority of the abilities tested.  (Tr. 355-58.)  Olunwa C. Ikpeazu, M.D., conducted Plaintiff's Physical RFC Assessment on January 22, 2007, and found that Plaintiff had no physical exertional or non-exertional limitations other than a distance vision limitation.  (Tr. 359-66.)

Plaintiff resumed treatment at Centerstone on February 19, 2008, after she reported experiencing passive suicide ideation and depression.  (Tr. 649.)  Following intake, Plaintiff missed several appointments but was eventually seen by Echo Moore, M.D., who treated Plaintiff with Abilify and hydrozyzine beginning May 20, 2008.  (Tr. 641, 643.)  On September 8, 2008, Dr. Moore described Plaintiff as having a history of bipolar disorder, posttraumatic

6

stress disorder, and substance abuse in remission. (Tr. 631.) At that time, Dr. Moore reported

that Plaintiff found her medications were helping to keep her calm. (*Id.*) Plaintiff's mother

agreed that Plaintiff was calmer and more in control when consistently took her medications.

(*Id.*)

During this period of treatment, Plaintiff filed her second application for SSI and was

examined by psychological examiner Bobbie Hand and Kathryn Sherrod, Ph.D., on June 30,

2008. (Tr. 380-86.) Dr. Sherrod diagnosed Plaintiff with polysubstance dependence and a

personality disorder not otherwise specified, with antisocial and borderline personality traits.

(*Id.*) Ms. Hand and Dr. Sherrod assessed Plaintiff as having a GAF score of 55. (*Id.*) Dr.

Sherrod found Plaintiff to have no limitations with regard to her abilities to understand,

remember, or concentrate, and expressed concern that Plaintiff was "attempting to present herself

as less functional than she actually is." (Tr. 386.)

Following Dr. Moore's September 2008 assessment, Plaintiff did not receive further

treatment until September 14, 2009, when she returned to Centerstone and underwent a

psychiatric evaluation. (Tr. 522.) At this time, Plaintiff stated that she was taking Lexapro and

Risperdal as prescribed. (*Id.*) Plaintiff also admitted to having resumed alcohol, marijuana, and

cocaine consumption. (Tr. 526.) Donna Venters, N.P., diagnosed Plaintiff with bipolar I

disorder with psychotic features and polysubstance dependence. (*Id.*) Plaintiff again missed

multiple appointments following her evaluation and was eventually seen by Yuejin Chen, M.D.,

on December 3, 2009, after reporting that her symptoms had worsened. (Tr. 965.) Dr. Chen

prescribed Plaintiff Geodon and hydroxyzine, and noted that Plaintiff had a history of chronic

non-compliance with treatment. (Tr. 965, 975.) On December 28, 2009, Plaintiff reported still

7

having racing thoughts and auditory hallucinations, but feeling calmer and less irritable when taking her current medications. (Tr. 981.)

By February 12, 2010, Alicia Batson, M.D., indicated that Plaintiff's irritability had improved, she was sleeping well, her mood was stable, and she had been sober. (Tr. 975.) Dr. Batson noted that Plaintiff had not experienced any side effects on Geodon aside from weight gain, and that she had allowed herself to run out of medication. (*Id.*) Shortly following this visit, Plaintiff served a 120-day jail sentence for a DUI conviction. (Tr. 265.) However, Plaintiff did not provide any treatment records covering the period of her incarceration.

Plaintiff was released from jail on June 15, 2010, and sought treatment at the Mental Health Cooperative ("MHC") on June 25, 2010. (Tr. 1002-25.) At intake, Plaintiff complained of hopelessness, increased appetite, decreased sleep, irritability, decreased energy levels, fatigue, mood swings, explosive temper, nervousness, depression, and anxiety. (Tr. 1003.) Plaintiff reported continued auditory hallucinations and spending entire days in bed. (*Id.*) Jessica Ruth, Mental Health Specialist, assessed Plaintiff as having a GAF score of 36 with marked limitations in activities of daily living and interpersonal functioning. (Tr. 1002, 1004.) In addition, Ms. Ruth described Plaintiff as being appropriately dressed with apparent good hygiene. (Tr. 1002, 1004.) Plaintiff was not on any medications at this time. (Tr. 1005.)

On July 1, 2010, Brandee Madden, N.P., prescribed Plaintiff Geodon and Vistaril to address Plaintiff's complaint of noticeable changes in her behavior since discontinuing her medication. (Tr. 1005-07.) On August 26, 2010, Plaintiff reported she was taking her medications and that her mood swings and ability to sleep through the night had improved, although she continued to experience some auditory hallucinations and isolation. (Tr. 1011.) By the end of September 2010, Plaintiff reported that her auditory hallucinations were "not as bad as

8

before." (Tr. 1015.) On November 22, 2010, Plaintiff reported that she was keeping up with her medications and had no concerns about her current mental state. (Tr. 1019.) Plaintiff presented no further concerns about her medication or symptoms until March 7, 2011, when she told Franklin Drummond, Ph.D., that she felt her medication was causing weight gain and that her mood stability had deteriorated. (Tr. 1012.) Dr. Drummond changed Plaintiff's medication to Seroquel and made a note to monitor Plaintiff for resolution of symptoms. (Tr. 1021.)

      2.  <u>Employment History</u>

At the June 30, 2010 hearing, Plaintiff testified before ALJ Roberts regarding her past work and education experience, as well as her exertional and non-exertional limitations. (Tr. 34-39.) At the same hearing, VE Weiss testified regarding the employment opportunities that exist in the national economy for both a person with Plaintiff's claimed limitations and a person with the limitations outlined in Dr. Ikpeazu's Physical RFC Assessment. (Tr. 40-45; 359-66.)

Plaintiff testified that she completed eleventh grade but did not attain a GED. (Tr. 34.) Plaintiff further testified that her only employment since 1993 was working as cleaning staff in 2009 at a bar owned by her mother. (Tr. 34-35.) In her testimony, Plaintiff stated that she earned $291.09 in 2009, confirming the information contained in her May 9, 2008 Application for SSI. (Tr. 34, 176-77.) Plaintiff also stated that she held various jobs between 1980 and 1993, and earned over $1000 per year only eight times between 1981 and 1993. (Tr. 34, 180.)

With respect to mental and emotional limitations, Plaintiff testified that she cannot work because of ongoing bipolar disorder, posttraumatic stress disorder, and schizophrenia. (Tr. 35.) Plaintiff explained that she sometimes hears voices and feels the need to run away from them. (Tr. 35-36.) She stated that she had episodes of hearing voices approximately four times in the four months she was incarcerated in 2010, and that each episode lasted for approximately ten

9

minutes.  (Tr. 39.)  Plaintiff confirmed that she received treatment at Centerstone for many years and that, at the time of the hearing, she was in the process of transitioning to MHC as her primary service provider.  (Tr. 36.)

With respect to physical limitations, Plaintiff testified that her leg pain limited her ability to work.  (Tr. 37.)  Plaintiff stated she was only able to stand for only thirty minutes before needing to sit, and could only sit for thirty minutes before needing to stand.  (*Id.*)  Plaintiff stated that, due to the metal rods in the right side of her body, she could walk for approximately ten to fifteen minutes before needing to rest ten to fifteen minutes before walking again.  (Tr. 38.)  She also testified that she could lift approximately five to eight pounds.  (*Id.*)  Plaintiff confirmed that she is nearsighted but does not have glasses because she cannot afford them and does not have insurance.  (Tr. 39.)  Plaintiff testified that she had been sober for approximately eight months at the time of the hearing.  (Tr. 44.)

VE Weiss testified that Plaintiff had no past relevant work for the purposes of determining her eligibility for SSI.  (Tr. 41.)  VE Weiss stated that taking Plaintiff's work and educational history, and physical and mental limitations as true, there would not be any jobs in the United States that she could perform.   VE Weiss also stated that based on Dr. Ikpeazu's Physical RFC Assessment of January 22, 2007 (Tr. 359-66), there were multiple jobs Plaintiff could perform at the medium exertion level (Tr. 41-42).  Additionally, VE Weiss testified that a GAF score of below 50 generally is indicative of serious symptoms which usually would preclude work entirely.  (Tr. 44.)

## II.  STANDARD OF REVIEW

The Court's review of the Magistrate's Report is *de novo*.  28 U.S.C. § 636(b) (2009). This review, however, is limited to "a determination of whether substantial evidence exists in the

10

record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2010). Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r*, 203 F.3d 388, 389 (6th Cir. 1999); *see also Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

11

### III.    PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff raises a single objection to the Magistrate's Report.  Plaintiff asserts that

Magistrate Judge Brown failed to address the "issue of whether Plaintiff was given an

opportunity to get complaint [sic] with treatment under Social Security Ruling (SSR) 82-59," and

asserts that this failure was an error of law.  (Doc. No. 23.)  Plaintiff argues that ALJ Roberts

decision was in conflict with language in SSR 82-59 regarding the issue of failure to comply

with treatment.  (*Id.*)  Specifically, Plaintiff claims that under SSR 82-59, when failure to comply

with treatment is first raised at the ALJ hearing but is not fully developed, and at the time of the

hearing it has been at least twelve months since the onset of the alleged disability, the ALJ is

required to give the claimant an opportunity to become compliant with treatment before denying

SSI benefits.  (*Id.*)

At the Plaintiff's ALJ hearing, ALJ Roberts, in part, cited Plaintiff's history of non-

compliance with medical treatment when determining Plaintiff's RFC.  (Tr. 23-24.)  For this

reason, Plaintiff asserts that Magistrate Judge Brown should have awarded Plaintiff SSI benefits

or remanded the case to the ALJ to fully develop the issue of whether the failure to comply with

medical treatment was justifiable in accordance with SSR 82-59.  (Doc. No. 23).

Plaintiff cites the following language from SSR 82-59 in support of her argument:

> If the issue of "failure" arises at the hearing or AC levels, if not fully developed
> through testimony and/or evidence submitted, and it has been 12 months after
> onset, a favorable decision will be issued, and the case will be referred for
> development of failure to follow prescribed treatment.

(Doc. No. 23 (quoting SSR 82-59, 45 Fed. Reg. 55566 (Aug. 20, 1980)).)

12

Plaintiff states that, more than twelve months had passed since the onset of her condition, when ALJ Roberts first mentioned her non-compliance with treatment.[3] (Doc. No. 23). Plaintiff reasons that because of this delay in time, under SSR 82-59, ALJ Roberts was required to give her an opportunity to become compliant with treatment. (*Id.*) Plaintiff argues that Magistrate Judge Brown's failure to address this issue was an error of law, and therefore the Report should not be followed. (*Id.*)

ALJ Roberts, however, found Plaintiff not was disabled within the meaning of the Social Security Act. (Tr. 25.) Specifically, ALJ Roberts found that "considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 24.)

A threshold requirement for the application of SSR 82-59 is that the claimant must be found to have a "disabling impairment" under the SSA. SSR 82-59, 45 Fed. Reg. 55566 (Aug. 20, 1980). Therefore the Court will first analyze ALJ Roberts's use of non-compliance with treatment in her decision finding the Plaintiff not disabled under the SSA, then discuss the applicability of SSR 82-59 to Plaintiff's case.

A.   *ALJ Roberts's treatment of Plaintiff's non-compliance with treatment was an appropriate factor to assess the credibility of Plaintiff's statements.*

The Court agrees with Magistrate Judge Brown's determination that ALJ Roberts properly evaluated Plaintiff's credibility based on her failure to comply with treatment and other substantial evidence that diminished Plaintiff's credibility. To be eligible for SSI a claimant has the ultimate burden to establish he or she is entitled to benefits, by proving his or her

---

[3] Plaintiff notes that her first application for SSI benefits was on July 24, 2006, the date of denial of reconsideration was May 5, 2008, and the first mention of her non-compliance was in the ALJ decision dated July 19, 2010. (Doc. No. 23.)

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A) (2004). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her RFC (*e.g.*, what the claimant can still do despite his or her limitations); if the claimant has the RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

5. At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. §§ 404.1520(a), 416.920(a) (2012); *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

If, at step five, the ALJ finds that the claimant cannot perform past relevant work or does not have past relevant work, he or she must consider whether the claimant can perform other

---

[4] The Listing of Impairments is found at 20 C.F.R. Part 404(P), App. 1 (2010).

14

work, by considering characteristics such as the claimant's RFC, age, education, and work experience. *Moon*, 923 F.2d at 1181; 20 C.F.R. § 404.1520(f)(1) (2012). The Commissioner must rebut the claimant's prima facie case by asserting proof of the claimant's individual RFC and vocational qualifications to perform specific jobs. *See Wright v Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003); *Moon*, 923 F.2d at 1181. Typically the Commissioner will use VE testimony asserting what types of jobs claimant could perform, based on the claimant's RFC, to rebut a claimant's prima facie case of disability. *See Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (January 1, 1983)).

Under 42 U.S.C. § 423(d)(5)(A):

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain.

(2004); *see also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990). When considering a claimant's statements regarding symptoms, the ALJ follows a two-factor test. First, the ALJ determines if there is objective medical evidence of a physical or mental impairment. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citations omitted); *see also* 20 C.F.R. § 404.1529 (2011). If such evidence exists, the ALJ next determines whether there is objective medical evidence to confirm the severity of the alleged symptoms arising from the impairment, or whether the impairment is of such severity that it could reasonably be expected to produce the alleged symptoms. *Walters*, 127 F.3d at 531; *see also* 20 C.F.R. § 404.1529 (2011).

When, under the second factor, a claimant's statements about his or her symptoms are not substantiated by objective medical evidence, the ALJ may assess the claimant's credibility to

15

determine validity of the statements. *Walters*, 127 F.3d at 531 (citing *Kirk v. Sec'y of Health & Human Servs.*, 818 F2.d 461, 463 (6th Cir. 1987)). Further, although an ALJ may not ignore a claimant's subjective complaints, an ALJ's finding regarding the credibility of a claimant's testimony is entitled to great deference. *Blacha*, 927 F.2d at 230.

Here, ALJ Roberts found under the five-step analysis that (1) Plaintiff had not engaged in any substantial gainful activity since filing her first SSI application on July 24, 2006; (2) Plaintiff suffered from the following severe impairments: bipolar disorder, personality disorder not otherwise specified, and a history of polysubstance abuse; (3) Plaintiff's impairments did not meet or medically equal one of the "listed" impairments under 20 C.F.R. Part 404(P), App. 1 (2010); (4) Plaintiff had the RFC to perform a full range of work at all exertional levels with non-exertional limitations listed in Dr. Kuptas August 12, 2008 Mental RFC Assessment (Tr. 401-04) and visual limitations listed in Dr. Ikpeazu's January 22, 2007 Physical RFC Assessment (Tr. 359-66); and (5) considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 17-25.) Based on her findings, ALJ Roberts determined that Plaintiff was "not disabled" in accordance with 20 C.F.R. § 416.920(g). (Tr. 25.)

In determining Plaintiff's RFC at step four, ALJ Roberts took into the account objective medical evidence in the record that was consistent and inconsistent with Plaintiff's stated symptoms. (Tr. 21-25.) ALJ Roberts found that although Plaintiff's medically determinable impairments could reasonably be expected to cause her stated symptoms, "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they are inconsistent with the above [RFC] assessment." (Tr. 21.) ALJ Roberts closely examined the evidence in the record and found that—not only did Plaintiff's

16

condition significantly improve with treatment—but that when treated appropriately, Plaintiff did not have any substantial limitations. (Tr. 22-23.) This evidence, in addition to Plaintiff's history of general non-compliance with treatment, as evidenced in the record, gave ALJ Roberts substantial evidence to find Plaintiff's testimony regarding the severity of her symptoms not credible. (Tr. 23-24.)

A review of Plaintiff's medical records shows that Plaintiff failed to show up for medical appointments, attempted to lie on a drug screen, was inconsistent in taking her medications, and had large gaps in treatment. (Tr. 265, 318, 386, 522, 526, 650-58, 683-935, 1002-25.) Additionally, Plaintiff participated in daily activities including household chores and cleaning, attending church, and speaking on the telephone with friends. Tr. 339.) During at least one examination, Plaintiff was suspected of "attempting to present herself as less functional than she actually is." (Tr. 23.) Accordingly, the Court finds that substantial evidence exists in the record to support ALJ Roberts's determination that Plaintiff's allegations about the severity of her symptoms were not credible. Furthermore, it was proper for ALJ Roberts to use Plaintiff's non-compliance with treatment as part of her credibility assessment.

B.    *SSR 82-59 inquiry is not triggered due to ALJ Roberts's finding that Plaintiff is not disabled.*

The Court finds that ALJ Roberts was not required to allow Plaintiff the opportunity to become compliant with treatment because Plaintiff did not meet the threshold requirement of being found to be disabled. Therefore, the Court finds that Social Security Ruling 82-59 is not applicable to Plaintiff's case.

Social Security Ruling 82-59, codified at 20 CFR § 404.1530, provides that a claimant who is found to have a disability under the five-step analysis above, but who does not follow

17

treatment prescribed by his or her physician that can restore her ability to work, must have a good reason for not following that treatment in order to be found disabled:

> An individual who *would otherwise be found to be under a disability*, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot be [sic] virtue of such "failure" be found to be under a disability.

SSR 82-59, 45 Fed. Reg. 55566 (Aug. 20, 1980) (emphasis added).

However, "[f]ailure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore her ability to work." *Hester v. Sec'y of Health & Hum. Servs.*, 886 F.2d 1315, 1989 WL 115632, *3 (6th Cir. 1989); *see also* 20 C.F.R. §§ 404.1530, 416.930 (2012). In other words, "Social Security Ruling 82-59 only applies to claimants who would otherwise be disabled within the meaning of the Act; it does not restrict the use of evidence of noncompliance for the disability hearing." *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

The objection Plaintiff raises is identical to the objection raised by the Plaintiff in *Holley*. *Id.* In *Holley*, the court held that "[t]he ALJ used the evidence of Holley's noncompliance solely to weigh the credibility of Holley's subjective claims of pain." *Id.* The court found that "Social Security Ruling 82-59 does not restrict the use of evidence of noncompliance, it merely delineates the reasons that the Social Security Administration may deny benefits to an otherwise disabled person because they fail to comply with their doctor's prescribed treatment." *Id.* This reasoning lead the court to conclude that SSR 82-59 was not applicable to Mr. Holley's case. *Id.*

Although Plaintiff asserts that it was error of law for Magistrate Judge Brown not to assess whether she was given an opportunity to become compliant with treatment under SSR 82-

18

59, as was held in *Holley*, the Court finds that Plaintiff was not entitled to assessment under the ruling due to ALJ Roberts's finding that Plaintiff is not disabled. As noted by Magistrate Judge Brown and detailed above, ALJ Roberts found Plaintiff not disabled at step five of its disability analysis and was therefore not required to analyze Plaintiff's failure to comply with treatment, or give Plaintiff an opportunity to become compliant before denying Plaintiff's claim. The Court further notes that ALJ Roberts could properly use Plaintiff's non-compliance with treatment as a factor in analyzing Plaintiff's credibility. The Court therefore finds, based on ALJ Roberts's decision, the SSR 82-59 language Plaintiff cites to in her Objection does not apply to her claim, and Magistrate Judge Brown made no error.

For the above-stated reasons, the Court finds that ALJ Roberts relied on substantial and appropriate evidence in determining the credibility of Plaintiff's stated symptom severity. Accordingly, because ALJ Roberts found Plaintiff not disabled for purposes of SSI, no analysis under SSR 82-59 was required.

## IV.  CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner. This order terminates this Court's jurisdiction over the above-captioned action, and the case is **DISMISSED**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this____27th____of September, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

19